41044. CALDWELL et al. v. THE STATE.
41045. CALDWELL v. THE STATE.
(321 SE2d 704)

HILL, Chief Justice.

This is a RICO forfeiture proceeding.[1] The primary issue involves the applicability of the Georgia RICO act to an elective office holder seeking reelection. A second but equally significant issue involves the sufficiency of the evidence necessary to authorize the temporary seizure, pending final adjudication, of property allegedly derived from or realized through a pattern of racketeering activity.

On December 27, 1983, the district attorney for the Stone Mountain Judicial Circuit filed a civil RICO forfeiture proceeding pursuant to OCGA § 16-14-7 against Sam Caldwell in the Superior Court of DeKalb County. Sam Caldwell was at that time the Commissioner of the Georgia Department of Labor.

The complaint included as an exhibit an indictment returned by the Fulton County grand jury on December 27, 1983, which charged Caldwell and others with, inter alia, 2 counts of violating the criminal provisions of the RICO act. Count 1 charged Caldwell and 15 employees of the Department of Labor with maintaining control of the Department through a pattern of racketeering activity consisting of al-

---

[1] RICO stands for "Racketeer Influenced and Corrupt Organizations." OCGA § 16-14-1.

leged crimes relating to the campaign preceding the 1982 election, to wit: theft by deception (2 incidents), extortion (6 incidents), false statements (1 incident), and false swearing (2 incidents). Count 2 alleged a RICO violation by the acquisition and control of money collected from employees of the Department as campaign contributions.

The property which the DeKalb District Attorney sought to have forfeited was "all campaign contributions received by Defendant from Department of Labor employees for Defendant's 1982 campaign for the office of Commissioner of Labor, as well as any . . . property . . . which may have been acquired through the expenditure of such campaign contributions by Defendant." The complaint seeking forfeiture also alleged that the property had and would be dissipated by the defendant absent immediate action being taken by the court.

The superior court entered, ex parte, a temporary restraining order on December 27, 1983, prohibiting the defendant and his agents from expending funds he received in 1982 as campaign contributions. On December 28 the court entered an ex parte order appointing a receiver "for all campaign funds received by the defendant during his 1982 campaign for the office of Commissioner of Labor, and all property . . . which was acquired by the expenditure of said campaign funds."

On January 9, 1984, the state filed a motion for contempt alleging that Caldwell and his secretary had violated the t.r.o. by withdrawing $14,633.37 in campaign funds from the bank.

On January 26, following a hearing, the trial court found that the defendant and his secretary were in contempt of the t.r.o. entered December 27, 1983, but that they had purged themselves of contempt by returning the money. The court also denied the defendant's motions to dismiss the complaint and the receiver and continued the t.r.o as a temporary injunction.

On March 1, 1984, the defendant's general demurrers to the RICO counts of the Fulton County indictment were sustained by the Fulton Superior Court. On March 7 the defendant again moved in DeKalb Superior Court to dismiss the civil forfeiture proceeding and dissolve the injunction and receivership. The trial court did not act on those motions but instead stayed the forfeiture proceedings in DeKalb County pending resolution on appeal of the dismissal of the RICO counts in the case in Fulton County.[2]

1. The defendant contends that the trial court erred in overruling his motion to dismiss the complaint. He contends, inter alia, that the RICO act, properly construed, was not intended by the General As-

---

[2] The case in Fulton County thereafter went to trial on the non-RICO counts of the indictment and the jury returned a verdict of guilty. The defendant resigned from office shortly thereafter.

sembly to apply to an elective office holder seeking reelection. We disagree.

The Georgia RICO act defines "Racketeering activity" to mean "to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime . . ." specified in 31 categories of laws, OCGA § 16-14-3 (3) (known as predicate offenses), including not only drug and alcohol crimes but also false swearing, false statements, theft by deception, etc. The act provides that " 'Pattern of racketeering activity' means engaging in at least two [similar or interrelated] incidents of racketeering activity. . . ." OCGA § 16-14-3 (2). The act then makes it a crime "for any person, through a pattern of racketeering activity . . . to acquire or maintain . . . control of any enterprise . . . ." OCGA § 16-14-4 (a). "Enterprise" is defined to include governmental entities. OCGA § 16-14-3 (1).

Defendant concedes that RICO would be applicable to a governmental entity if organized criminals gained control of it from without by bribery or like means. By urging that RICO was not intended to apply to an elective office holder seeking reelection, the defendant is urging, in effect, that RICO was not intended to apply where control of a governmental entity is gained or maintained from within. However, substituting the words "governmental entity" for "enterprise" in OCGA § 16-14-4 (a), supra, it is a crime for any person, through a pattern of racketeering activity [i.e., by committing 2 or more similar or interrelated predicate offenses], to acquire or maintain control of any governmental entity. The language of the act is clear. Acquiring or maintaining control of a governmental entity by means of a pattern of racketeering activity constitutes a crime whether such control be obtained from without or within. See United States v. Davis, 707 F2d. 880 (6th Cir. 1983). By its express terms, the RICO act includes as a crime a reelection campaign by the holder of public office in which 2 or more similar or interrelated predicate offenses specified in the act are committed. The trial court did not err in overruling the defendant's motion to dismiss the complaint.

2. Defendant urges that the trial court erred in granting the temporary injunction freezing certain of defendant's assets because there was no evidence supporting the allegations that defendant had committed any of the predicate offenses necessary to establish a violation of the RICO act and to authorize forfeiture. He concedes that the indictment was before the court, but views it as mere allegations. He does not complain of any lack of evidence that absent seizure the property might be dissipated, and the transcript of the hearing shows that the state did produce sufficient evidence of threatened dissipation to authorize seizure.

The trial court was charged by the RICO act with finding at that stage of the proceeding "reasonable cause to believe that the property

is subject to forfeiture." OCGA § 16-14-7 (e). Temporary injunctions may issue based upon facts presented by affidavit. See *Chattanooga &c. R. Co. v. Morrison*, 140 Ga. 769 (3) (79 SE 903) (1913); OCGA § 24-10-40. The existence of an indictment charging the defendant with a RICO violation is both a fact and a finding by the grand jury that there is probable cause to believe that a crime in violation of RICO has been committed by the defendant. See *State v. Middlebrooks*, 236 Ga. 52 (222 SE2d 343) (1976). We conclude that the trial court did not err in finding that the RICO indictment provided reasonable cause to believe that the property identified in the indictment was subject to forfeiture and in entering the temporary injunction on January 26.

Defendant also contends, however, that the trial court erred in overruling his motion to dismiss brought after the RICO counts were dismissed from the Fulton County indictment. At the hearing on March 7, 1984, defendant argued that since the RICO counts of the indictment had been dismissed there was nothing to support the civil forfeiture proceeding. The prosecutor elected not to present any evidence and instead asked the court to stay the matter until the validity of the RICO counts in the Fulton County indictment had been determined on appeal. She indicated that she did not wish to put up any evidence because it would provide the defendant with pretrial discovery of much of the state's case. While we appreciate the difficulty of the prosecutor's position, we also appreciate the severe impact that seizure of assets can have on an individual. We have found that the RICO indictment provided reasonable cause to believe that the property was subject to forfeiture. Adopting the prosecutor's secondary position would mean that an insufficient RICO indictment would support a seizure for however long it took for the appellate process to be exhausted. Upon balancing the interests involved we conclude that once the RICO counts in the Fulton County indictments had been dismissed, it was incumbent on the DeKalb County prosecutor to present evidence of RICO violations sufficient to allow the trial court to make a finding of reasonable cause to believe the property at issue was subject to forfeiture. OCGA § 16-14-7 (e). Because the prosecutor declined to present such evidence at the March 7 hearing, the trial court erred in not granting the defendant's motion to dissolve the temporary injunction and dismiss the receiver.

3. Defendant urges that the trial court erred in awarding the court-appointed receiver $5,799.18 as compensation to be paid out of the defendant's funds. The state relies on a line of cases holding that since the trial judge has discretion in an equity case as to apportionment of costs, he will not be reversed absent a showing of abuse of discretion, and the fact that costs are charged against a prevailing party is not necessarily an abuse of discretion. See, e.g., *Lowe v. Byrd*,

148 Ga. 388 (5) (96 SE 1001) (1918). But those cases were decided under a statute, Code of 1910, § 5423 (§ 37-1105 of the Code of 1933), which was repealed by the Civil Practice Act. Ga. L. 1966, p. 609 at 688.

Thus we conclude that while as an interlocutory matter the trial court had the authority to order the receiver paid from the seized funds, OCGA § 9-8-13 (b), because the seizure must be dissolved and the receiver dismissed, the defendant's accounts must be reimbursed the costs which were charged to them. See OCGA § 9-15-1.

4. We decline to address defendant's contention that the trial court erred in adjudging the defendant and his secretary to be in contempt for withdrawing accumulated interest because the trial court also ruled that they had purged themselves of the contempt by returning the money at issue. Thus this enumeration of error is moot.

5. Defendant complains that the trial court erred in denying him permission to pay litigation expenses he had incurred prior to the institution of the RICO forfeiture proceeding out of seized funds. We disagree. Once the RICO forfeiture proceeding commences and the funds are seized, the defendant's right to use the seized assets, including interest previously accumulated thereon, is the issue in contention. Prior to its final determination, the defendant may not continue to use the assets.

The remaining enumerations of error are overruled. However, in view of our ruling in Division 2, the decision of the court below must be reversed.

*Judgment reversed. All the Justices concur.*

DECIDED OCTOBER 11, 1984.

*Heard, Leverett & Adams, E. Freeman Leverett, Worozbyt & Morrison, Theodore S. Worozbyt,* for appellants.

*Robert W. Wilson, District Attorney, Susan Brooks, Assistant District Attorney,* for appellee.