76348. STATE OF GEORGIA et al. v. SHEARSON LEHMAN
BROTHERS, INC. et al.
(372 SE2d 276)

PER CURIAM.

The State of Georgia on May 14, 1985, filed this civil action under Georgia's Racketeer Influenced & Corrupt Organizations Act, OCGA § 16-4-1 et seq. (RICO), against twenty brokerage dealers and insurance companies, including appellees Shearson Lehman Brothers, Inc., and the Robinson-Humphrey Company, Inc. In its complaint, the State alleged that appellees and the other defendants committed various RICO predicate offenses including state and federal securities violations and mail and wire fraud. Appellees and the other defendants immediately removed the case to the federal court, but the case was remanded to the superior court on August 16, 1985. The other defendants have since been dismissed as a result of settlement. Appellant Marion T. Pope, Jr., filed a petition for intervention and class certification on September 30, 1985, which was granted *ex parte* by the superior court. In June 1986, appellees filed a motion to disqualify one of the attorneys for appellants, Special Assistant Attorney General Andrew Ekonomou, on the ground that he had been a hearing officer in a related administrative hearing. After receiving evidence at a hearing in September 1986, the superior court granted that motion and disqualified Ekonomou. In December 1986, appellees filed a motion to dismiss the complaint, on the ground that the complaint failed to state a claim upon which relief could be granted. The motion also attacked the court's class certification and grant of intervention to Judge Pope. The court granted the motion to dismiss for failure to state a claim and this appeal followed.

1. Appellees have filed a motion to dismiss this appeal on the ground that exclusive appellate jurisdiction rests in the Georgia Supreme Court. We deny this motion as appellate jurisdiction is proper in this court for the following reasons: (1) the equitable relief sought by the State (the permanent injunction) has become moot because appellees no longer market the financial instruments complained of; (2) the State has formally abandoned all relief sought for the revocation of business licenses; (3) because the complaint primarily seeks forfeiture and money damages, any minor equitable relief sought as a corollary to those money damages is properly heard by the Court of Appeals; and (4) jurisdiction over the appeal by Marion T. Pope, Jr., should not be heard by the Supreme Court because Judge Pope originally sought no equitable relief in the trial court.

2. We note at the outset that all such motions to dismiss for failure to state a claim should be granted only where a complaint "shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved in support of the claim." *Property Pickup v. Morgan*, 249 Ga. 239, 240 (290 SE2d 52, 53) (1982). See OCGA § 9-11-12 (b) (6). In its order granting appellee's motion to dismiss, citing as authority the expression of the General Assembly's intent in enacting RICO, the court below found that the complaint failed to state a civil RICO claim because appellants did not allege that appellees were "organized criminal elements attempting to take over the legitimate economy of this state." See OCGA § 16-14-2. As this level of criminal activity would not have been shown even if all the facts in appellants' allegations proved to be true, the court granted the motion to dismiss. We hold, however, that the expression of legislative purpose in enacting Georgia's RICO act is *not* an element of a civil cause of action under the act, and reverse the grant of appellees' motion to dismiss for failure to state a claim.

The Georgia Supreme Court, in *Caldwell v. State*, 253 Ga. 400 (321 SE2d 704) (1984), has identified the elements of a civil RICO forfeiture proceeding for purposes of a motion to dismiss and we follow that reasoning here.

A private cause of action is created in favor of persons injured by violations of OCGA § 16-14-4, by the language of OCGA § 16-14-6 (c). The relevant portion of OCGA § 16-14-4 reads as follows: "(a) It is unlawful for any person, *through a pattern of racketeering activity* or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property or personal property of any nature including money. (Emphasis added.)"

Thus, the conduct prohibited by the act is the acquisition of (in this case) money through a "pattern of racketeering activity." The act further provides that "pattern" means engaging in at least two incidents of racketeering activity. OCGA § 16-14-3 (2). Finally, "racketeering activity" is defined to mean the commission of a crime in any of thirty-one specified categories of offenses (known as predicate offenses). OCGA § 16-14-3 (3). A complaint, therefore, which alleges that the plaintiff was injured as a result of the defendant having committed at least two similar or interrelated predicate offenses shall survive a motion to dismiss for failure to state a claim. See *Caldwell v. State* at 253 Ga. 400, supra; see also *Stanton v. Shearson Lehman/ American Express*, 622 FSupp. 293 (N.D. Ga. 1985) (the court rejected an argument identical to that urged by appellees in the instant case).

Among the enumerated categories of predicate offenses are violations of the Georgia Securities Act of 1973 and any conduct defined as "racketeering activity" under the federal RICO laws. OCGA § 16-14-3

(3) (A). In the instant case, appellees were alleged to have committed state securities crimes, federal RICO crimes, mail fraud, wire fraud and the interstate transportation of fraudulently obtained money. Thus, these allegations fall under the list of predicate offenses. Additionally, these offenses are alleged to have occurred at least twice in that appellees are alleged to have committed the predicate offenses in multiple transactions with numerous people between 1979 and June 1983. If proven, these allegations would entitle appellants to relief. Thus, the complaint states a claim on which relief might be granted and does *not* "show with certainty that the plaintiff would not be entitled to relief under any set of facts which could be proved in support of the claim." *Property Pickup,* supra. The motion to dismiss was, therefore, improvidently granted. Accordingly, we reverse that part of the superior court's order dismissing the case for failure to state a claim.

3. On September 30, 1985, Marion T. Pope, Jr., appellant, filed a petition to intervene and for provisional class certification. This petition was accompanied by a brief in support of the motion to intervene, the class action complaint, and the *ex parte* order of the trial judge granting the motion. All of these documents were mailed to counsel of record for the various defendants. On October 18, 1985, appellee Shearson moved to vacate the order granting intervention on the ground, among others, that it had been obtained *ex parte.* On August 12, 1987, the trial judge entered an order vacating the September 30, 1985, order on the ground that it was entered *ex parte.* As shown below, that August 12 order was correct.

Appellant intervenor failed to comply with the provisions of the statute which govern intervention and pursuant to which he elected to move for intervention. OCGA § 9-11-24 (c) provides that: "A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Code Section 9-11-5. . . . The same procedure shall be followed when a statute gives a right to intervene." Thus, an intervenor attempting to intervene pursuant to the right of intervention must comply with OCGA § 9-11-5. This section provides that, "every motion, other than one which may be heard *ex parte* . . . shall be served upon each of the parties." This is not a motion which could have been heard *ex parte.* Georgia Uniform Court Rule 4.1 provides: "Except as authorized by law or rule, judges shall neither initiate nor consider *ex parte* communications by interested parties or their attorneys concerning pending or impending proceedings." The appellees were not served with the motion to intervene prior to any hearing and the order granting intervention was an *ex parte* order. Thus the superior court was correct in vacating its order.

Such was the holding in *Gregory v. Tench,* 130 Ga. App. 219 (225 SE2d 753) (1976). In that case, Gregory had secured an *ex parte* or-

der allowing him to intervene and, like appellant intervenor here, served the *ex parte* order on the day it was granted. This court held that because the notice requirement under former Code Section 81A-106 (d) (now OCGA § 9-11-6 (d)) was not complied with, the lower court did not err in vacating its prior order granting the *ex parte* application to intervene. We follow that reasoning here and affirm the superior court's order vacating its prior order allowing intervention.

4. Appellant further contends that the trial court erred in granting appellees' Motion to Disqualify Special Assistant Attorney General Andrew Ekonomou from representing the State. We agree.

Ekonomou appears to have merely acted as a lawyer in an investigative position. The proceeding which he "convened" was more equivalent to a deposition than an "administrative" or "judicial hearing." The mere fact that a court reporter labeled him the "hearing officer" is not dispositive of his status. The only evidence that Ekonomou acted as a "hearing officer" was the front page of the transcript which, again, was arbitrarily styled by the court reporter. Any such categorization was totally rebutted by evidence presented at the hearing before the trial judge.

As Ekonomou was simply conducting an informal inquiry there was no violation of the Code of Professional Responsibility (Directory Rule 901 (A) or (B)). As he was not acting in a judicial capacity there was no violation of Rule 901 (A) and as Ekonomou represented the State throughout both proceedings and acquired no information as a government attorney which he then used as a private attorney to the benefit of that private client, there was no violation of Section B of the Rule. There was no conflict of interest, therefore, and no appearance of impropriety. The case law is clear that counsel may not be disqualified on the basis of an appearance of impropriety alone. *Blumenfeld v. Borenstein*, 247 Ga. 406, 409 (276 SE2d 607) (1981). While there does not appear to be even an appearance of impropriety here, clearly there was no conflict of interest or any jeopardizing of client confidences coupled with it so as to outweigh a client's (the State's) interest in having an attorney of choice.

A special assistant attorney general is authorized to both investigate and prosecute offenses. *Brown v. State*, 177 Ga. App. 284 (339 SE2d 332) (1985). Ekonomou's position in the case at bar is consistent with this approved dual capacity.

As Ekonomou was not acting in a judicial capacity there could be no violation of any of the provisions of the Code of Judicial Conduct.

*Judgment affirmed in part and reversed in part. Judge William M. Fleming, Judge James E. Findley and Judge Philip F. Etheridge concur.*

124

Decided July 11, 1988 —
Rehearing denied July 28, 1988

*Michael J. Bowers, Attorney General, Harrison Kohler, George P. Shingler, Senior Assistant Attorneys General, David F. Walbert, for appellants.*

*Ellis G. Arnall, Allen I. Hirsch, John Clay Spinrad, Harvey D. Myerson, Lloyd S. Clareman, Robert J. Mandell, for appellees.*